UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Etta Marie M., | ) | |
| | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 18 CV 50419 |
| | ) | Magistrate Judge Lisa A. Jensen |
| Andrew Marshall Saul, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|     *Defendant*. | ) | |

**MEMORANDUM OPINION AND ORDER[1]**

In 2015, Plaintiff Etta M. applied for disability benefits based on a heart problem, rheumatoid arthritis, and a shoulder problem. In 2017, an administrative law judge (ALJ) found Plaintiff was not disabled. She was then 59 years old. The ALJ's main rationales were that Plaintiff had minimal treatment and was able to do fairly vigorous part-time work. Plaintiff seeks a remand based on two conceptually different arguments. The first and more traditional argument is that the ALJ improperly played doctor. The second is that the ALJ was unconstitutionally appointed and thus had no authority to render any decision. Because the Court is remanding based on the constitutional issue it will not address the first issue.

**DISCUSSION**

In her second argument, Plaintiff seeks a remand based on the argument that the ALJ was not properly appointed under the Appointments Clause. *See* Art. II, § 2, cl. 2. This argument is based on *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018) where the Supreme Court held that Securities and Exchange Commission (SEC) ALJs were "officers," as opposed to mere employees, because

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c).

1

they exercised significant discretion, and thus may only be appointed by "the President, a court of law, or a head of department." *Id.* at 2051. It was undisputed in *Lucia* that all the ALJs did not meet this standard because they had been appointed by SEC staff members. In the final paragraph of its opinion, the Court briefly discussed remedies. The Court noted that a party must make a "timely challenge" to the ALJ's allegedly defective appointment, but the Court did not define precisely what this phrase meant. *Id.* at 2055. The Court did note that the claimant in *Lucia* had timely raised the Appointments Clause argument by asserting it before the SEC (*i.e.* at the administrative appeal level). The Court also held that any new hearing ordered as a result of a successful Appointments Clause challenge cannot take place before the ALJ who heard the case previously, even if that ALJ was properly appointed in the interim.

  *Lucia* was decided on June 21, 2018. The next month, the Acting Social Security Commissioner responded by issuing an emergency message stating that the appointments of all Social Security Administration (SSA) ALJs across the country were approved by her. Dkt. #14 at 11. This ostensibly addressed the issue for future cases. But there were many cases already in the pipeline, and claimants began adding Appointments Clause arguments to their other arguments for remand. In these cases, the Commissioner has argued that claimants forfeited the Appointments Clause argument by not raising it at the administrative level. The Commissioner relied on *Lucia's* "timely challenge" language, as well as earlier cases such as *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952), which held that a party may not wait until it gets to federal court to raise a statutory defect in the appointment of an agency official.

  Plaintiffs meanwhile have relied heavily on *Sims v. Apfel*, 530 U.S. 103 (2000), a plurality decision holding that Social Security disability claimants are not required to exhaust all

2

issues at the Appeals Council level.[2] Plaintiffs typically have raised some type of futility argument, asserting that the Social Security administrative process does not provide a clear mechanism for raising constitutional arguments. And they have argued that even if an individual ALJ did somehow accept the argument, there would be no remedy because all SSA ALJs at the time were unconstitutionally appointed. Both sides have advanced policy arguments, such as the floodgates of litigation.

The above summary is a thumbnail sketch. The arguments are laid out in more detail in the large and still-expanding body of cases since *Lucia*. The Commissioner asserts that the clear weight of authority is on its side because 39 out of the 41 district courts that have decided the issue have held that claimants who did not raise the argument at the administrative level forfeited it.[3] But some cases go the other way. Plaintiff relies heavily on three district court cases: *Bizarre v. Berryhill*, 364 F.Supp.3d 418 (M.D. Pa. 2019); *Bradshaw v. Berryhill*, 372 F.Supp.3d 349 (E.D.N.C. 2019); *Culclasure v. Commissioner*, 375 F.Supp.3d 559 (E.D. Pa. 2019). If this were solely a numbers game, the Commissioner would be the winner. In their briefs, neither side argued that the Seventh Circuit has spoken to this issue, and neither side cited to any district court in this Circuit addressing the issue.

However, since briefing concluded, numerous cases have continued to be decided. A few district courts in this Circuit have now addressed this issue. In *Marilyn R. v. Saul*, 18-CV-4098, 2019 WL 4389052 (C.D. Ill. Sept. 13, 2019), Judge Sara Darrow in the Central District of Illinois adopted a report and recommendation agreeing with the Commissioner's position that the argument had been waived. The ruling raised concerns about sandbagging by claimants who

---

[2] This case did not involve a claim under the Appointments Clause.
[3] The Court will not set forth each of these many cases here. The string cite listing them in the Commissioner's brief spans three pages.

3

might wait to raise the argument until after losing at the administrative level—in effect, getting two bites at the apple. *Id.* at *5. But there are three other cases reaching the opposite conclusion. Two were issued by Judge Joseph S. Van Bokkelen and one was issued by Judge Robert L. Miller, Jr. in the Northern District of Indiana. *See Morris W. v. Saul*, 19-CV-320, 2020 WL 2316598 (N.D. Ind. May 11, 2020); *Duane H. v. Saul*, 19-CV-138, 2020 WL 1493487 (N.D. Ind. Mar. 27, 2020); *Jianna H. v. Saul*, 18-CV-296 (N.D. Ind. Mar. 23, 2020).[4] Neither side filed a motion to alert the Court to any of these new cases, presumably reflecting their belief that none of them altered the basic framework already presented. The Court will not cite to these new cases or even summarize them in a general way, but the Court does find one case deserving of closer scrutiny.

In January 2020, the Third Circuit addressed this issue in *Cirko v. Commissioner of Social Security*, 948 F.3d 148 (3rd Cir. 2020). This is the first and, to this Court's knowledge, only circuit court ruling on this question. It is true that this Court is not obligated to follow a decision from another circuit. *See United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1993). However, the Seventh Circuit has directed district courts to "give most respectful consideration to the decisions of the other courts of appeals and follow them whenever [they] can." *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987). A district court may not defer mechanically to other circuits, however, or abdicate its duty to independently decide a legal question. *Id.* A posture somewhere in between some deference and complete deference is proper when cases in different circuits challenge the same practice of the same defendant, particularly if different outcomes would place the defendant under inconsistent obligations. *Id.* at 1124; *Wilkins*

---

[4] On May 20, 2020, the Commissioner filed an appeal in *Duane H.*, 2020 WL 1493487 and *Jianna H. v. Saul*, 18-CV-296. *See Duane H. v. Saul*, Case No. 20-1855 (7th Cir.) (consolidated briefing with *Jianna H. v. Saul*, Case No. 20-1860 (7th Cir.)).

*v. Just Energy Grp. Inc.*, No. 13-CV-5806, 2019 WL 1317756, at *4 (N.D. Ill. Mar. 22, 2019). With these concepts in mind and for the reasons stated below, this Court finds *Cirko* persuasive and hereby adopts its reasoning.[5]

In *Cirko*, the Third Circuit summarized the competing arguments, policy rationales, history, and case law. The Court discussed the Supreme Court's rulings in *Lucia*, *Freytag*, *Sims*, and *L.A. Tucker Truck Lines*, acknowledging that none of them provided an easy answer. *See* 948 F.3d at 154 ("neither *Lucia* nor *Freytag* map perfectly onto our case"). To determine whether to impose a judicially-created exhaustion requirement, the Third Circuit analyzed the three considerations set forth in *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992).

As for the first consideration (the "nature of the claim presented"), the Third Circuit found that it did not favor an exhaustion requirement. The court observed that an exhaustion requirement was generally more appropriate when an agency was exercising its discretion or applying its "special expertise" but was "generally inappropriate where a claim serves to vindicate structural constitutional claims like Appointments Clause challenges, which implicate both individual constitutional rights and the structural imperative of separation of powers." 948 F.3d at 153 (discussing the important historical purposes behind the Appointments Clause, including political accountability and protecting individual liberty). The Third Circuit also noted that "[a]n individual litigant need not show direct harm or prejudice caused by an Appointments Clause violation." *Id.* at 154. The Third Circuit relied on *Freytag* where the Supreme Court "had declined to enforce exhaustion in the Appointments Clause context," although the Supreme

---

[5] Judge Van Bokkelen also relied on this decision.

Court had done so by finding that the case warranted an exception from the more general principle that litigants should raise objections at the trial level. *Id.*

As for the second consideration ("characteristics of the particular administrative procedure provided"), the Third Circuit also found that it counseled against exhaustion. The court relied heavily on *Sims*, which had relied on two "unusual features of the SSA review process": (i) "no SSA regulations required exhaustion to the Appeals Council," and imposing an additional requirement would "penalize claimants who did 'everything that the agency asked'"; and (ii) "the inquisitorial nature of Appeals Council hearings rendered the case for exhaustion 'much weaker' because the [Administrative Appeals Judges] did not rely upon the parties 'to develop the issues in an adversarial administrative proceeding' anyway." *Id.* at 155 (quoting *Sims*). The Third Circuit recognized that *Sims* did not discuss the failure to raise a challenge before the ALJ, as opposed to the Appeals Council, and did not involve a claim under the Appointments Clause, but the Third Circuit still found that the "lessons [from *Sims*] loom large." *Id.* In short, it concluded that the same no-exhaustion rule for Appeals Council hearings should also apply to ALJ hearings. *Id.* at 156. The Third Circuit again cited to the fact that Social Security administrative proceedings are "inquisitorial and driven by the agency rather than the claimant." *Id.*

As for the third consideration ("balancing the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion"), the Third Circuit once again found it counseled against exhaustion. *Id.* The individual interest was high because, under the SSA's inquisitorial system, the ALJ "plays a starring role" and the claimant "may choose to play a bit part" and is "not required to develop facts, let alone make legal arguments." *Id.* at 156-57. Requiring exhaustion "would upend this

arrangement by forcing claimants—despite the informal, non-adversarial nature of the review process—to root out a constitutional claim even beyond the power of the agency to remedy, or alternatively risk forfeiture." *Id.* Another reason cited by the Third Circuit was that *pro se* claimants would likely not be able to raise the exhaustion argument. *Id.*

As for the countervailing governmental interest, the Third Circuit found that it was low because, first of all, this constitutional question was outside the agency's expertise. *Id.* at 158. The second traditional rationale, giving an agency the opportunity to the correct the error, was inapplicable because SSA judges could not "cure the constitutionality of their own appointments, whether by reappointing themselves or by transferring the case to a constitutionally appointed ALJ." *Id.* (internal citations omitted). The Third Circuit also addressed the "error-detection theory" urged by the Commissioner, which was based on the idea that ALJs would all collectively pass their concerns up to the Commissioner who eventually would be prompted to take corrective action. *Id.* The Third Circuit concluded that it was unlikely and unrealistic to expect that the Commissioner would have taken action based on this type of scenario. Finally, the Third Circuit addressed the floodgates-of-litigation argument, finding that the number of cases fitting within the applicable time parameters in which this argument could be raised was "actually a trickle" rather than a flood. *Id.* at 159.

After considering these arguments, the Court is persuaded more by *Cirko* than by the line of district court cases relied on by the Commissioner. The Court will not go through all the arguments again because they have already been extensively analyzed in depth in this large, nationwide body of cases and because a definitive resolution must be made by the Seventh

Circuit and ultimately the Supreme Court.[6] But the Court will briefly highlight the points it finds persuasive.

First, the Court agrees with the point made in *Sims* about the heavily inquisitorial nature of Social Security disability adjudication. *See* 530 U.S. at 110 ("The differences between courts and agencies are nowhere more pronounced than in Social Security proceedings."); *see also Duane H.*, 19-CV-138, 2020 WL 1493487 at *2 ("Social Security administrative hearings before ALJs are considerably different than normal adversarial litigation, so this weak analogy provides little reason to require issue exhaustion."); *Morris W.*, 19-CV-320, 2020 WL 2316598 at *2 (same). This fact distinguishes this case from other cases such as *Lucia*, where the administrative proceedings involved an adversarial process more closely resembling a case before a Federal district court judge. Second, the Court agrees that there is a salient difference between substantive and structural constitutional claims. *See Mercado v. Saul*, 19-CV-11172, 2020 WL 2735980, *7 (D. Mass. May 26, 2020) (stating that it "finds the distinction between substantive and constitutional claims convincing"). Third, ALJs would not have any special expertise in deciding these purely legal questions. *See Morris W.*, 19-CV-320, 2020 WL 2316598 at *3 ("this is not a matter in which a fuller record would help the Court's analysis"). The SSA decision-making process typically does not allow for the type of extensive briefing that would be required to properly assess this issue and, as many have noted, the Commissioner is not even involved at all at this level.[7] Fourth, even if this issue were considered, it seems unlikely, as the *Cirko* court

---

[6] Some district court have followed *Cirko* while others (outside of the Third Circuit) have not. For a summary of the post-*Cirko* landscape, *see Iris R. v. Saul*, 19-CV-1165, 2020 WL 2475824, *6 (N.D.N.Y. May 13, 2020).

[7] The Commissioner has pointed to several SSA regulations suggesting claimants should raise any and all issues to the agency at the earliest juncture. Dkt. #24 at 17-18. For example, 20 C.F.R. § 404.940 states: "An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision. If you object to the administrative law

observed, that any ALJ would conclude that he or she were unconstitutionally appointed. As a result, the administrative hearing would have gone forth in the usual manner, with a hearing on the merits, even if the claimant raised the issue. Fifth, if an ALJ were inclined to accept the argument, it is not clear whether the ALJ could have fixed the problem given that all the SSA ALJs were in the same position. In short, to require claimants to raise this issue to the ALJs would be to require an act that likely would have been futile. Sixth and finally, there is a concern about how this requirement would apply to *pro se* claimants. Although the claimant here is represented by counsel, and an exception possibly could be carved out for *pro se* claimants, creating two sets of rules carries its own set of problems. *See Sims*, 530 U.S. at 114 (O'Connor, J., concurring) ("I think it would be unwise to adopt a rule that imposes different issue exhaustion obligations depending on whether claimants are represented by counsel.").

Even though this Court is persuaded that the arguments in *Cirko* are more convincing on balance, the Court recognizes that there are several legitimate counter-arguments. One is the error-detection theory discussed in *Cirko*. This argument rests on the notion that this issue might have been remedied earlier if claimants, especially those represented by counsel, had consistently flagged the issue more promptly. This argument finds support from statements in *L.A. Tucker Truck Lines*. *See* 344 U.S. at 37 ("Repetition of the objection in [a large number of cases] might lead to a change in policy, or, if it did not, the Commission would at least be put on notice of the accumulating risk of wholesale reversals being incurred by its persistence."). A second argument is sandbagging. Judge Darrow in *Marilyn R.* raised this concern in her ruling. It is true that many

---

judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity." These provisions provide some loose support for the notion that the claimant could in theory raise this argument. But, as discussed elsewhere herein, the mere possibility that the claimant could raise the issue does not overcome the concerns about whether it would be adequately presented and resolved at the administrative level.

9

claimants are represented by experienced counsel at the administrative level and that counsel could have fairly easily raised this issue, by for example including a short objection in the pre-hearing letter brief or even by making an oral objection for the record at the start of the hearing. But for the reasons stated already, the Court finds that these actions, if taken, would not have likely changed the basic legal landscape. Ultimately, as the Supreme Court has repeatedly noted, the Appointments Clause implicates important constitutional concerns. In *Lucia*, the Supreme Court justified its decision to remand the case to a different ALJ, even if the original ALJ had been constitutionally re-appointed in the interim, on the ground that it was important "to create '[]incentive[s] to raise Appointments Clause challenges." *Lucia*, 138 S.Ct. at 2055, n.5 (quoting *Ryder v. United States*, 515 U.S. 177, 183 (1995)). One could view the notion of incentives from various angles. For example, one could argue that relaxing the waiver doctrine to allow this issue to be raised in the district court is an even greater incentive and one that will help advance the important purposes of the Appointments Clause. This Court finds that argument persuasive.

## CONCLUSION

For the above reasons, Plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the case is reversed and remanded for further proceedings. On remand, a new ALJ should be appointed and that ALJ should review Plaintiff's case with a fresh eye without giving any weight or deference to the prior ALJ's ruling.

Date:  June 24, 2020               By:    *Lisa A. [signature]*
                                          Lisa A. Jensen
                                          United States Magistrate Judge